UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORINDA W. WILLIAMS,<br><br>    Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Civil No. 11cv1141 W (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 10 & 14-1] |

Lorinda Williams ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's ("Defendant" or "Commissioner") final decision denying her claim for social security disability insurance benefits (SSD), and supplemental security income benefits (SSI). This case was referred for a report and recommendation on the parties' cross motions for summary judgment. See 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment and for reversal and/or remand [Doc. No. 10] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 14-1] be **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for SSD and SSI benefits on October 1, 2007, claiming mental disability. (Administrative Record (AR) at 122, 127.) Plaintiff alleged her condition first interfered

with her ability to work on January 31, 2006.  (AR at 122.)  The Commissioner denied Plaintiff's applications for benefits both initially and on reconsideration.  (AR at 53-57, 63-68.)  An Administrative Law Judge (ALJ) held a hearing on March 5, 2010.  (AR at 23.)  Plaintiff and a vocational expert, Alan Cummings, testified at the hearing.  (AR at 23-24.)  Based on the testimony and documentary evidence the ALJ issued a decision denying Plaintiff's application for benefits.  (AR at 9-22.) Plaintiff filed an administrative appeal.  The Appeals Council affirmed the ALJ's decision.  (AR at 1-4.)  Plaintiff filed this action under 42 U.S.C. § 405(g).

## II. RELEVANT FACTS

**Background**

Plaintiff was born on April 17, 1958.  (AR at 45.)  She has at least a high school education. (AR at 46.)  In the past, she worked as a dance teacher, telephone solicitor, teacher aide, and cashier. (AR at 39.)  Plaintiff testified she became disabled and stopped working on January 31, 2006.  (AR at 27-28.) She stopped working after her employer met with her and expressed concern about Plaintiff's increasing stress level.  (AR at 28.)

To counter her stress, Plaintiff sought therapy from Kaiser Permanente beginning in September 2006.  (AR 243-266.)  Treatment notes describe Plaintiff as anxious, fatigued, and prone to panic attacks.  (AR 443.)  On March 25, 2008, Plaintiff was diagnosed with major recurrent depression and panic disorder without agoraphobia.  (AR at 452.)

**Medical Evidence**

**A.     Annette Pozos, M.D., Kaiser Permanente, Treating Psychiatrist (2001-2009)**

Annette Pozos, M.D., examined Plaintiff on March 11, 2009, and diagnosed her with panic disorder and major recurrent depression.  (AR at 530-531.)  Dr. Pozos's treatment notes describe Plaintiff as alert and oriented.  (AR at 530.)  Dr. Pozos planned to see Plaintiff again in one year.  (AR at 530.)

On February 19, 2010, Dr. Pozos submitted a Mental Residual Functional Capacity (RFC) assessment form to evaluate Plaintiff in multiple work related categories.  (AR at 964.)  Dr. Pozos indicated by way of checkmarks that she believed Plaintiff was moderately limited in her ability to: understand and remember very short and simple instructions; carry out very short and simple

1  instructions; interact appropriately with the general public; and ask simple questions or request
2  assistance. (AR at 964-965.)
3       Dr. Pozos assessed Plaintiff as markedly limited in her ability to: remember locations and work-
4  like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain
5  attention and concentration for extended periods; perform activities within a schedule, maintain regular
6  attendance, and be punctual within customary tolerances; sustain an ordinary routine without special
7  supervision; work in coordination with others without being distracted; make simple work related
8  decisions; complete a normal work day and work week without interruptions from psychologically
9  based symptoms; perform at a consistent pace without an unreasonable number of rest periods; accept
10 instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers
11 without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and
12 adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work
13 setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use
14 public transportation; and set realistic goals or make plans independently of others. (AR at 964.)
15      Dr. Pozos did not explain any of her conclusions, though the assessment form provided space to
16 explain conclusions in "narrative form." (AR at 966.)
17      In a letter accompanying the assessment form, Dr. Pozos wrote that the Psychiatric Department
18 at Kaiser Permanente had treated Plaintiff for depression and anxiety for five years. (AR at 969.) She
19 stated it was highly likely Plaintiff would require continued treatment. (AR at 969.) Dr. Pozos also
20 stated in her opinion Plaintiff's psychiatric symptoms were disabling her from working. (AR at 969.)
21 **B.  Gregory Nicholson, M.D., Seagate Medical Group, Examining Psychiatrist (2009)**
22      Defendant sent Plaintiff for a consultative psychiatric evaluation with Dr. Nicholson on October
23 6, 2009. Following the examination, Dr. Nicholson submitted a comprehensive psychiatric evaluation,
24 in which he diagnosed Plaintiff as having Panic Disorder and "Bipolar Disorder, not otherwise specified,
25 currently depressed." (AR 405.) Dr. Nicholson stated Plaintiff was able to: understand, remember, and
26 carry out simple one or two-step job instructions; carry out detailed and complex instructions; accept
27 instructions from supervisors; and perform work activities without special supervision. (AR at 406.)
28 Dr. Nicholson further stated Plaintiff was mildly limited in: relating to and interacting with co-workers

1  and the public; maintaining concentration and attention, persistence and pace; and maintaining regular
2  attendance in the work place and performing work activities on a consistent basis. (AR at 406.) Finally,
3  Dr. Nicholson said Plaintiff was moderately limited in associating with day-to-day work activity,
4  including attendance and safety. (AR at 406.) Dr. Nicholson described Plaintiff as cooperative,
5  coherent, organized, relevant, and alert. (AR at 403-404.) Additionally, he stated that Plaintiff had no
6  feelings of hopelessness, helplessness, or worthlessness. (AR at 404.)

**C.  N. Haroun, M.D., U. Jacobs, Ph.D., Non-examining Consultants for Social Security Administration**

On February 1, 2008, Dr. Haroun submitted a psychiatric review form and a RFC Assessment, which said Plaintiff suffered only mild functional limitations. (AR 350-364.) Dr. Haroun said that there is no compelling evidence to suggest Plaintiff would not be able to perform simple repetitive tasks. (AR 360.) Dr. Jacobs affirmed Dr. Haroun's decision on February 20, 2008. (AR at 371-375.)

### III. ALJ HEARING AND DECISION

**Plaintiff's Testimony**

At the hearing, Plaintiff testified that she could not work due to mental health complications. More specifically, Plaintiff complained of high levels of anxiety and stress. Plaintiff stated that she is unable to function on some days, and cannot leave bed for several days a week. (AR at 30-31.) She testified that her anxiety is overwhelming, leading to several panic attacks a week. (AR at 31-32.)

Plaintiff reported being on Gabapentin, Celexa, and Doxepin to stabilize her nervous system, counter depression, and help her sleep. (AR at 32.) Over the years, doctors have prescribed her various medications, including Prozac, Xanax, Effexor, Lithium, and Lamictal. (AR at 37.)

Plaintiff testified that she lives at home with her husband and a 22-year-old son. (AR at 33.) Plaintiff said she leaves the house only "once in a great while" to get the mail or groceries. (AR at 34.) She referred to watching television as her only "pleasurable activity." (AR at 35.)

Upon questioning by the ALJ, Plaintiff said she had recovered from a past three-month-long alcohol addiction. (AR at 43.)

**Vocational Expert's Testimony**

Alan Cummings, a vocational expert, testified as to whether Plaintiff could perform any work

under the psychological evaluation forms submitted by Dr. Pozos and Dr. Nicholson. Under Dr. Pozos's assessment, Cummings stated that Plaintiff would be unable to perform full-time work with continuity. (AR at 39.) However, under Dr. Nicholson's assessment, Cummings said that Plaintiff would be able to perform all of her past work, which included work as a cashier, dance instructor, teacher's aid, and telephone solicitor. (AR at 39-40.)

**The Written Decision**

The ALJ issued a written opinion denying Plaintiff's claim for benefits. (AR at 9-22.) She first concluded that Plaintiff met the insured status requirements of the SSA, and had not engaged in substantial gainful activity since March 1, 2007. (AR at 14.) She found Plaintiff had the following severe impairments: cyclothymia, panic disorder without agoraphobia, and a history of alcohol abuse. (*Id.*) The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Code of Federal Regulations. (*Id.*)

The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff can perform simple, detailed, and complex tasks on a sustained basis with minimal limitations in interacting with others. She should be in an environment that is not dangerous and should not be around dangerous machinery, unprotected heights, or be required to drive heavy equipment. (AR at 15-16.) The ALJ concluded that Plaintiff is capable of performing past relevant work as a cashier, dance instructor, telephone solicitor, and teacher's aid, and that she has not been under a "disability" as defined in the SSA from March 1, 2007, through the date of the decision. (AR at 17-18.)

## IV. LEGAL STANDARDS

**Evaluating Social Security Disability Claims**

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

**Substantial Evidence**

The SSA provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id.*, *Batson*, 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 259 F.3d at 1193. It is not this Court's job to reinterpret or re-evaluate the evidence however much a re-evaluation may reasonably result in a favorable outcome for Plaintiff. *Id.*

## V. DISCUSSION

Plaintiff argues that the ALJ failed to state specific and legitimate reasons for rejecting the opinion of Plaintiff's treating psychiatrist, who found Plaintiff was incapable of performing any substantial gainful activity. (Plaintiff's Motion for Summary Judgment at 12-15.)

Plaintiff correctly states that if an ALJ rejects a treating physician's opinion, she must state specific, legitimate reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

However, the treating physician's opinion is not binding on the ALJ if it is conclusory, brief, or unsupported by the record as a whole. *Batson*, 259 F.3d at 1195. Here, the ALJ stated specific and legitimate reasons for rejecting Dr. Pozos's opinion, and noted that Dr. Pozos's opinion is "totally without support in the record." (AR at 17.)

First, the ALJ noted Dr. Pozos's infrequent treatment of Plaintiff. (AR at 17.) Indeed, Dr. Pozos saw Plaintiff only five times in four years, with a large gap from October 2007 to January 2009. An ALJ may consider frequency of treatment when determining how much weight to give to a treating doctor. 20 C.F.R. § 404.1527(d)(2)(I) ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

Second, the ALJ pointed to Dr. Pozos's treatment notes, which support the conclusion that Plaintiff did not have a disabling condition but rather that she suffered from cyclothymia, "a mild mood disorder." (AR at 17.) Other notes taken by Dr. Pozos describe Plaintiff as normal, alert, oriented, calm, and pleasant. (AR at 692, 781.) Further, as the ALJ pointed out, treatment records show Plaintiff had good results on her mental status examinations, had an improving mood, felt that her medication was working properly, and told doctors that she intended to go back to work. (AR at 16-17, 637, 692, 781, 880, 883.) Thus, there was discrepancy between existing medical records and Dr. Pozos's ultimate opinion. An ALJ may properly afford little weight to a doctor's opinion when that opinion is inconsistent with other medical findings. 20 C.F.R. § 404.1527(d)(3)-(4) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion . . . Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Third, the ALJ noted that Dr. Pozos, following her final appointment with Plaintiff in March 2009, said Plaintiff would not need a follow-up appointment for one year. (AR at 17.) The ALJ said this is not a time frame one "would expect as a recommendation for an individual with the limitations Dr. Pozos put forth in February 2010 statements." (*Id.*)

Fourth, the ALJ pointed out that Dr. Pozos's findings in the "check-off" assessment form were entirely unsubstantiated. (AR at 17.) Indeed, while the form includes a section in which the medical consultant is to "explain . . . conclusions in narrative form," Dr. Pozos failed to write anything in this

section. (AR at 966.) Dr. Pozos's signed letter is similarly thin. There, Dr. Pozos writes that the hospital has treated Plaintiff for depression and anxiety, and that Plaintiff's psychiatric symptoms are "disabling her from working." (AR 968.) However, Dr. Pozos failed to specify which symptoms Plaintiff was suffering from, or how these symptoms rendered her disabled. (AR 968.) In essence, the letter provided nothing more than the check-off form. Thus, Dr. Pozos's opinion is conclusory and brief. *Batson*, 259 F.3d at 1195.

Further, the ALJ relied on the results of mental status exams that found Plaintiff's mental state as consistently normal. For example, the ALJ relied on the opinions of the examining psychiatrist Dr. Nicholson, and on the state agency doctors. (AR 17.) Dr. Nicholson described Plaintiff as non-delusional, coherent, organized, alert, oriented, and insightful. (AR at 404-405.) The state agency doctors found no compelling evidence to suggest Plaintiff would not be able to perform simple repetitive tasks (AR at 360.) These opinions serve as additional specific and legitimate reasons for rejecting the opinion of Dr. Pozos. Moreover, their opinions serve as substantial evidence supporting the ALJ's findings with respect to Plaintiff's mental impairment and exertional limitations. Dr. Nicholson's opinion alone constitutes substantial evidence because it rests on his own independent examination of Plaintiff. *Tonapetyan v. Halter,* 242 F.3d 1149 (9th Cir. 2001). And the state consultative doctors' opinions constitute substantial evidence because they rest on Plaintiff's treatment record. *Id.* at 1149.

All of these points are specific and legitimate reasons for declining to give controlling weight to Plaintiff's treating physician's opinion when determining Plaintiff's RFC. *See Batson*, 359 F.3d at 1195 (ALJ did not err in giving minimal weight to treating physician's opinion that was conclusory and unsupported by objective medical evidence); *Tonapetyan*, 242 F.3d at 1149 (ALJ properly rejected treating physician's opinion that was unsupported by rationale or treatment notes). Thus, the ALJ did not act improperly by rejecting the opinion of Dr. Pozos.

This Court **FINDS** that the ALJ outlined specific and legitimate reasons for rejecting the opinion of Plaintiff's treating psychiatrist, and that substantial evidence otherwise supports the ALJ's finding that Plaintiff was not under a "disability" as defined in the SSA. Based on this finding, the Court declines to determine whether to award benefits or remand the case.

/ / /

## VI. CONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits is supported by substantial evidence and is free of legal error. Therefore, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment [Doc. No. 10] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 14-1] be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **February 14, 2012**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **February 21, 2012**.

Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED**

DATED: January 24, 2012

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court